FIRST DIVISION

MARCH 27, 2000

No. 1-98-3324 (consolidated with 1-98-3463)

VICTORIA M. WALSH, ) Appeal from the

) Circuit Court of

Plaintiff-Appellee, ) Cook County, Illinois.

)

v. ) No.  92 CH 4500

)

CAPITAL ENGINEERING AND ) Honorable

MANUFACTURING CO., an Illinois) Robert Boharic,

corporation, CAPITAL ) Judge Presiding.

ENGINEERING AND MANUFACTURING )

CO, a partnership, CAPITAL )

ENGINEERING WAREHOUSING & )

SALES, an Illinois Corporation)

LEASE-A-MACHINE, a partnership)

VIRGINIA FERRELL, JOHN WALSH, )

VERONICA JARYMOWYCZ, THOMAS H.)

HANSEN, DONALD SMITH, )

SUCCESSOR TRUSTEES OF THE )

JOSEPH MILETIC TRUST, dated )

October 4, 1972, and UNKNOWN )

OTHERS, VALERIA McGRATH, and )

BORYS JARYMOWYCZ, )

)

Defendants-Appellants. )

JUSTICE TULLY delivered the opinion of the court.

Defendants appeal from the denial of a Rule 137 motion for sanctions entered by the trial court on August 13, 1998. 155 Ill.2d R. 137.  Defendant Walsh filed a timely Notice of Appeal on September 14, 1998.  The remaining defendants filed their Notice of Appeal on September 4, 1998. Both appeals were consolidated by this court on November 5, 1998. Jurisdiction is vested pursuant to Supreme Court Rule 303.  155 Ill.2d R. 303.

For the reasons which follow, we affirm.

Plaintiff and defendants, Virginia Ferrell, Valeria McGrath and Veronica Jarmowycz are sisters and daughters of the late Joseph Miletic. (Miletic)  In 1972, prior to his death, Miletic executed an irrevocable trust naming Virginia and Valeria as 25% beneficiaries, defendants Veronica and Borys Jarmowycz, as 12.5% beneficiaries, and plaintiff and her husband, Jack Walsh, as 12.5% beneficiaries.  The res of the trust was the corporate stock of Capital Engineering and Manufacturing (CEMCO-C).  Five trustees were named: Virginia, Veronica, Jack Walsh, Thomas Hanson and Donald Smith.

Miletic also established three other companies. Capital Engineering & Manufacturing Co., a partnership (CEMCO-P) which owns the real estate leased to CEMCO-C and conducts the design and drafting for CEMCO-C.  The named partners were Veronica, Valeria and Victoria. Capital Engineering Warehousing & Sales Co., a corporation (CEWS), provides engineering services to CEMCO-C. Virginia, Valeria, Veronica and Victoria each own 15.625% of the CEWS stock. Lease-A-Machine, a partnership, leases machines and equipment to CEMCO-C.  The named partners were Virginia, Valeria, Veronica, Victoria, Jack Walsh, and Borys Jarymowycz.

In 1976, plaintiff and defendant, Jack Walsh divorced.  Pursuant to the terms of the Miletic trust document, Walsh's beneficial interest was terminated and transferred to plaintiff; increasing her proportionate share to 25%.  However, Walsh continued in his capacity as a trustee of the Miletic trust, President of CEMCO-C, and partner in Lease-A-Machine (LAM).

Beginning in 1984, plaintiff and defendant Walsh engaged in acrimonious post-decree litigation in which plaintiff sought child support payments from Walsh.  Throughout this litigation, Walsh's income and ownership interests in the various defendant entities were significantly contested issues necessitating extensive discovery which yielded detailed financial information about defendant Walsh as well as the defendant entities.  Walsh resigned as president of CEMCO-C in 1987.  In 1991, as part of a settlement agreement concluding seven years of post-decree litigation with plaintiff, Walsh agreed to sell his entire interest in LAM to plaintiff and resign as trustee of the Miletic Trust.

In 1992, plaintiff filed a verified complaint against all the defendants charging the individual defendants with violating their fiduciary offices and conspiring to deprive her of her interest in the Miletic trust; i.e., the profits of CEMCO-C.  That complaint was dismissed for failure to state a cause of action. Over the next three years, plaintiff filed three substantially similar complaints, each of which was similarly dismissed.

From June, 1994, and continuing through June 1996, in an apparent effort to avoid further familial litigation, the individual defendants voluntarily allowed plaintiff's attorneys and accountants access to the financial records of the defendant entities. In June 1996, plaintiff's attorneys retained Norman Lorch, a forensic CPA, who subsequently testified as an expert witness in this case, to review and examine the financial records of the defendant entities. Hundreds of thousands of documents were photocopied and delivered to Lorch's office for his review.

On June 17, 1996, Valerie, Virginia and CEMCO-C's outside accountants Dave Jouza and Thomas Hanson, met with plaintiff's counsel and accountants to answer questions which had been raised as a result of the two-year investigation into the defendant companies' financial records.  

On July 15, 1996, plaintiff filed her fifteen count Fourth Amended Complaint.  The trial court dismissed all but the first two counts of that complaint.  Count I sought an accounting of the Miletic trust and CEMCO-C.  Count II sought dissolution and receivership of the Miletic trust. 

Plaintiff alleged the defendants, in their capacities as owners or partners in the various defendant entities, engaged in a scheme to transfer profits and assets between the entities in a manner that substantially diminished plaintiff's interests.  She further alleged this scheme had been ongoing since at least 1979 and that she was unable to discover the conspiracy until 1988 due to the active concealment by the named individual defendants.  The active concealment "consisted of the defendants' denying plaintiff's requests for information with respect to the profits of the various defendant entities, including denying plaintiff's demands for formal accountings." 

The first 36 paragraphs of the fourth amended complaint set forth the facts supporting the circuit court's proper jurisdiction over the cause and thus were incorporated and realleged in each count thereafter.  Paragraph 40 of Count I contained 15 separate specific allegations of wrongdoing by the individual defendants (paragraphs A-O).  Lorch's initial and supplemental reports provided the basis for those allegations and were incorporated into plaintiff's fourth amended complaint as exhibits.  

Defendants deposed Lorch, plaintiff's sole accounting expert, on September 27, 1997.  During that deposition, Lorch testified the allegations contained in paragraphs 40C, K, L, M, N, and O were, in his view, no longer at issue as documents submitted to him for review following the filing of plaintiff's complaint had "cleared up" some of his previous concerns.

Based solely on Lorch's deposition testimony, defendants filed a motion for partial summary judgment which sought to have paragraphs 40 C, K, L, M, N, and O stricken.  In her response to defendants' motion, plaintiff urged the motion be denied as it was premised upon the assumption Lorch was the sole witness testifying as to the validity of those allegations.  Plaintiff claimed to have other witnesses and evidence which would substantiate those allegations at trial.  The trial court took the motion under advisement and the case proceeded to trial on all issues contained in Counts I and II of plaintiff's complaint. After 11 days of trial, the parties reached a settlement agreement.

Defendants filed their motions for sanctions pursuant to Supreme Court Rule 137 against plaintiff's attorneys following entry of the agreed order of dismissal. 155 Ill.2d R. 137. The motions sought sanctions against plaintiff's attorneys (Gummerson) for continuing to prosecute and proceeding to trial on claims he knew to be false, i.e. paragraphs 40 C, K, L, N, and O of count I. The trial court denied defendants motions holding Rule 137 does not require the withdrawal of individual allegations within a complaint if the withdrawal of those allegations would not resolve the entire controversy between the parties.

The issue before us is whether Supreme Court Rule 137 imposes an obligation upon counsel to withdraw individual allegations in support of one claim within a multi-claim complaint prior to trial where that attorney knows the allegations to be unsupported by fact or law.  Our review of this issue extends considerable deference to the trial court and we will not disturb a sanctions ruling absent an abuse of discretion.  
Mandziara v. Canulli
, 299 Ill. App. 3d 593, 601 (1998).  This general rule does not preclude this court from independently reviewing the record and finding an abuse of discretion where the facts so warrant.  
Pritzker v. Drake Tower Apartments, Inc.
, 283 Ill. App. 3d 587, 590 (1996).

Rule 137 requires the party signing a pleading or paper to make a reasonable investigation into the facts and the law prior to filing.  Failure to comply with this mandate may subject the litigant, litigant's attorney, or both to court ordered sanctions which may include payment of the other party's attorney fees and costs.
(footnote: 1)  
Chicago Title & Trust Co. v. Anderson
, 177 Ill. App. 3d 615, 621 (1989).  The inquiry must be completed with respect to each allegation within a pleading, as well as each denial.  
Chicago Title & Trust Co. v. Anderson
, 177 Ill. App. 3d at 625.  The "reasonableness" of an inquiry is measured against an objective standard looking to the circumstances existing at the time the pleading or legal paper was submitted to the court.  
Toland v. Davis
, 295 Ill. App. 3d 652, 656 (1998).  That the signing party "honestly believed" the case was well grounded in fact or law is insufficient to meet the obligation imposed by Rule 137.  
Shea, Rogal & Associates, Ltd. v. Leslie Volkswagen, Inc.
, 250 Ill. App. 3d 149, 153 (1993).

 Although it was an issue at the trial level, defendants do not challenge the adequacy of plaintiff's initial inquiry on appeal.  The record reveals the trial court concluded that Gummerson satisfied the requirements of Rule 137 in that he reasonably relied not only on his client's representations but on the expertise of a forensic accountant when framing the specific allegations contained in counts I and II of plaintiff's fourth amended complaint. The court stated: [S]urely an attorney under the circumstances here, given the nature of this action, should be able to give weight to such an accountant's report."  We agree.

However, defendants maintain that Rule137 imposes a continuing duty which requires the signing party to amend or withdraw a paper once it is determined to be unfounded in whole or in part.  Therefore, they conclude plaintiff's attorney was required to withdraw the specific allegations contained in paragraphs 40 C, K, L, M, N, and O of Count I when plaintiff's expert no longer supported the factual accusations of impropriety asserted in those paragraphs.

While Rule 137 does not expressly state that an attorney has a continuing duty of inquiry throughout the pendency of litigation, this court has followed the lead of the seventh circuit and implied such an obligation. See 
Cmarko v. Fisher
, 208 Ill. App. 3d 440 (1990).  We held that an attorney is duty bound to promptly dismiss a lawsuit once it becomes evident it is unfounded.  
Shea, Rogal & Associates, Ltd. v. Leslie Volkswagen, Inc.
, 250 Ill. App. 3d at 153; 
Cmarko v. Fisher
, 208 Ill. App. 3d 440, 446 (1990); In 
re Custody of Caruso
, 185 Ill. App. 3d 739, 744 (1989).  Because an attorney's first duty is to the administration of justice, he is obligated to dismiss a claim which is ultimately revealed to be unfounded in its entirety, even over objections from his client.  
In re Custody of Caruso
, 185 Ill. App. 3d at 744-45. Moreover, an attorney may not shield a breach of his Rule 137 obligations behind the simplistic plea that he was merely following his client's directions or that he was merely exercising his right to a trial.  
In re Custody of Caruso
, 185 Ill. App. 3d at 446.  See Also, 
Hernandez v. Williams,
 258 Ill. App. 3d 318 (1994) (Law firm sanctioned for filing jury demand in small claims case without adequate factual basis.  Court held the firm breached its duty to plaintiff by putting him through unnecessary burden of trial and to legal system by taking time of judge, jury, and other officers).

However, we have also specifically held that Rule 137 does not require counsel to amend or withdraw a paper of pleading if he discovers, after signing, that it is unfounded.  An attorney need not revise the pleadings to conform with newly discovered information.  
Chicago Title & Trust Co. v. Anderson
, 177 Ill. App. 3d at 626.  See also, 
Schoenberger v. Oselka
, 909 F.2d 1086 (7
th
 Cir. 1990); 
Gravel v. DiDomenico
, 908 F.2d 223 (7
th
 Cir. 1990); 
Samuels v. Wilder
, 906 F.2d 272 (7
th
 Cir. 1990).  "Nevertheless counsel cannot simply remain silent when faced with this newly discovered information, file additional papers with the court that do not reveal the more recent discoveries, and by such silence allow court and opposing counsel to draw erroneous conclusions or proceed on improper assumptions.  Instead, once it appears that the prior factual allegation is in error, this must be brought forthrightly to the attention of court and opposing counsel, at the least in the next available court filing." 
Chicago Title & Trust co. v. Anderson
, 177 Ill. App. 3d at 627.

In light of the foregoing, it is clear Gummerson was not obligated to withdraw the specific allegations in question nor amend the complaint to reflect his expert's renunciation of those allegations.  He was, however, obliged to be forthcoming with both counsel and the court about his expert's current negative opinion of those specific allegations - which he was not.  Gummerson filed a response to defendant's motion for partial summary judgment as to paragraphs 40 C, K, L, M, N and O, in which he claimed to have "other evidence" to support those allegations in spite of his expert's abandonment of same.

In its response, plaintiff stated: "Defendant's motion must be denied, because their motion relies upon one witness when plaintiff has more than one witness, and relies upon their [plaintiff's] lack of documentation. *** Further, the Defendants provide no support for their assumption that Mr. Lorch will provide the only evidence on these issues."  However, Gummerson did not specify what "other evidence" would be available to substantiate those claims in the absence of testimony from their sole expert.

We find this argument to be disingenuous at the very least.  This was the fourth amended complaint filed within a three-year period of time and the sole pleading to survive a motion to dismiss for failure to state a claim.  Clearly, Lorch's accounting expertise provided plaintiff with the facts necessary to substantiate her suspicions of accounting and managerial irregularities in the defendant entities.  Consequently, when Lorch testified that certain irregularities had been "cleared up" or become "non-issues," it seems evident plaintiff's attorney could not reasonably believe he would succeed at trial on those issues with "other evidence."  This conclusion is borne out by Gummerson's brief on appeal which includes the sentence: "The fact is t hat these few allegations had been basically cleared up and became non-issues prior to trial."  However, at no time while this matter was pending in the circuit court, did Gummerson ever concede that the allegations contained in those particular paragraphs, which may have been reasonable when filed, had lost their validity as the discovery process had explained the perceived management and accounting irregularities.  In fact, he vigorously defended against defendants' motion for partial summary judgment as to those specific allegations.  The consequence of Gummerson's untenable position was that defense counsel was required to prepare for trial on all the allegations in the complaint, most of which were technical and complicated and required significant efforts and resources to rebut.
(footnote: 2)  Thus, to pursue this claim with all allegations intact coupled with the knowledge there was no competent evidence to support said allegations renders the pleading, at least in part, harassing and vexatious, the very conduct which Rule 137 seeks to prevent.

Gummerson argues that sanctions are appropriate only where a party pursues allegations, after discovery of their factual infirmity, which form the entire basis of the claim asserted.  Therefore, because paragraphs 40 C, K, L, M and O, were not essential to maintaining plaintiff's demand for an accounting, counsel's insistence in proceeding to trial on all twenty-five allegations was "hardly [a] sufficient basis for sanctions."  We disagree.  Gummerson premises his argument on the erroneous belief that a party cannot be sanctioned unless the unfounded allegations are fundamental to the survival of the entire claim.

Illinois courts frequently seek guidance from the Federal Court's interpretations of their Rule 11 in considering the appropriateness of sanctions.  
Zander v. Whitney
, 242 Ill. App. 3d 523, 535 (1993).  The seventh circuit has addressed this very issue in 
Melrose v. Shearson/American Express, Inc.
, 898 F.2d 1209 (7
th
 Cir. 1990).  That court stated:

"It is true that in the part we have

generally focused attention on the 

motion or pleading as a whole, rather 

than on its parts, in determining whether 

Rule 11 sanctions were appropriate 

[citations].  We have also expressed some 

doubt as to whether a point by point 

analysis of a pleading or motion under 

Rule 11 would be worthwhile in every case. 

[citation] It, however, is neither contrary

to the language of Rule 11 as amended, 

nor an abuse of discretion for the district 

court to undertake such a detailed 

analysis when the court believes the 

circumstances warrant it.  A litigant 

cannot expect to avoid all sanctions under 

Rule 11 merely because the pleading or 

motion under scrutiny was not 
entirely
 frivolous. [citation] (emphasis in original).  

898 F.2d 1209 (7
th
 Cir. 1990). 

We concur with the seventh circuit's analysis of this issue. To adopt a standard that would deny sanctions for significant and obviously meritless claims or allegations known to be false simply because the remainder of the pleading was sound offends the spirit of Rule 137.  The stated purpose of Supreme Court rule 137 is to prevent abuse of the judicial process by penalizing litigants who bring vexatious or harassing actions based upon unsupported allegations of law or fact.  
Shea, Rogal & Associates, Ltd. v. Leslie Volkswagen, Inc.
, 250 Ill. App. 3d 149, 152 (1993).  Thus, we hold that a litigant cannot expect to avoid all sanctions under Rule 137 merely because the pleading was not entirely frivolous.  Moreover, when the invalidity of an allegation or claim becomes known to the signing party prior to trial, that party has an obligation to act in good faith with both opposing counsel and the court.

In the instant case, we find the trial court applied an improper standard in assessing Gummerson's conduct.  The mandates of conduct contemplated by Rule 137 attach to each pleading or paper filed in a court proceeding.  Thus, the trial court must measure counsel's conduct against an objective standard taking into account the facts known at the time each separate pleading or paper is filed.  We hold that Gummerson violated the mandates of Rule 137 when he signed and filed a response to defendants' motions for partial summary judgment in which he claimed to possess "other evidence" to support those allegations which, in fact, he did not.  Thus, he breached his duty to opposing counsel and the court by forcing defendants to prepare for trial on five separate significant factual allegations of wrongdoing which is own expert recanted and which he admittedly had no evidence to substantiate at trial.

In light of the foregoing, the judgment of the circuit court is reversed and the cause remanded for a determination of appropriate sanctions pursuant to the provisions of Supreme Court Rule 137.

Reversed and Remanded.

RAKOWSKI, J., and GALLAGHER, J., concur.

 

FOOTNOTES
1:  Supreme Court Rule 137 provides in pertinent part:

"***. The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other paper; that to the best of his knowledge, information and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. *** If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, may impose upon the person who signed it *** an appropriate sanction, which may include an order to pay the other party or parties the amount of reasonable expenses incurred because of the filing of the pleading *** including a reasonable attorney fee." 155 Ill.2d R. 137.

2:  The allegations contained in the complaint follow:

Plaintiff is informed and believes that said scheme to conceal and deprive her of her interest in CEMCO-C profits consisted of the following purposeful actions:

The transferring of assets and profits of CEMCO-C to unknown entities through the use of the interrelationship of the Defendant entities. ***

The misrepresenting of CEMCO-C's labor costs for 1987.

The inflation of worker's compensation expenses by Defendant, CEMCO-C, thereby reducing Plaintiff's interest in Defendant, CEMCO-C. ***

The failure to transfer corporation income tax refund proceeds to Defendant, CEMCO-C. **

The misappropriation of CEMCO-C certificates of deposit. ***