SECOND DIVISION

September 26, 2000

No. 1-99-2935

MARY NISSENSON and WILLIAM SCHEER, )  Appeal from the

)  Circuit Court of

Plaintiffs, )  Cook County.

)

)

)

CRAIG BRADLEY, )

)  No. 96 L 10396

Defendant-Appellee )

)

(Roy Olson, )  Honorable

)  Jennifer Duncan-Brice,

Contemnor-Appellant). )  Judge Presiding.

PRESIDING JUSTICE CAHILL delivered the opinion of the court:

Contemnor Roy Olson was the attorney for plaintiff Mary Nissenson in this medical malpractice action.  Contemnor appeals from an order finding him in contempt for failure to pay $3,220 in attorney fees and expenses incurred by defendant Craig Bradley, M.D.  The fees were assessed as a sanction under Supreme Court Rule 137 (155 Ill. 2d R. 137) for contemnor's failure to withdraw an allegedly false medical report attached to plaintiff's complaint as required by section 2-622 of the Code of Civil Procedure (Code) (735 ILCS 5/2-622 (West 1998)).

On appeal, contemnor contends: (1) Supreme Court Rule 137 and section 2-622 of the Code only provide for sanctions against the attorney who files a false or fraudulent pleading or paper; (2) Dr. Fisher's report was not false, fraudulent or inaccurate; and (3) contemnor's conduct was reasonable at all stages of the case.

On September 6, 1996, plaintiffs Mary Nissenson and her husband William Scheer filed this action, listing Phillip Taxman and Brian Hurst of Phillip Taxman, Ltd., as their attorneys.  The complaint alleged medical and professional negligence against defendant Craig Bradley, M.D., and his business, an out-patient surgical clinic.  Mary alleged that on February 23, 1995, Dr. Bradley negligently performed facial cosmetic surgery on her after a November 3, 1994, consultation.  Brian Hurst signed an affidavit that he had reviewed the case with Dr. Jack Fisher, a health professional reasonably knowledgeable in the relevant practice area.  Hurst averred that Dr. Fisher determined, after review of the medical records and other materials, there was a reasonable and meritorious basis for filing the action.  Also attached to the complaint was the following document:

"MEDICAL REPORT 

I am board certified and in active practice in the same specialty as Dr. Craig Bradley.  I am involved with the teaching of medical students, residents and interns.  I have reviewed the records provided to me by Mrs. Mary Scheer's attorneys concerning her care by Dr. Craig Bradley in Chicago, Illinois.  I have based my opinion on the fact that Dr. Bradley deviated from the appropriate standard of care through the following acts and omissions:

(a) Dr. Bradley failed to do a proper, complete and thorough work-up of Mrs. Scheer, including, but not limited to failing to consider alternative methods of treatment and therapy;

(b) Dr. Bradley performed procedures on Mrs. Scheer that were unnecessary, not indicated, contraindicated, and which exposed Mrs. Scheer to an avoidable and unreasonable risk of injury;

(c) Dr. Bradley failed to properly diagnose the condition of Mrs. Scheer;

(d) Dr. Bradley failed to obtain appropriate, proper and requisite informed consent for procedures performed on Mrs. Scheer.

I believe the foregoing deviations directly and proximately resulted in the injuries suffered by Mrs. Scheer.

My opinions are subject to modification upon the obtaining of additional information through discovery or otherwise."

The document was unsigned, on plain paper, with Dr. Fisher's name and address in San Diego typed at the bottom.  Defendants answered on October 1, 1995, without challenging the medical report.

On May 22, 1998, contemnor wrote Dr. Fisher that Mary's prior attorney had withdrawn and that he represented Mary.  On August 13, 1998, contemnor wrote to Dr. Fisher and asked that he review physician reports and depositions.  On January 5, 1999, contemnor sent Dr. Fisher a copy of Dr. Bradley's deposition for his review. Dr. Fisher replied on January 17, 1999, concluding, "I cannot find a basis for declaring anything that Dr. Bradley did or failed to do to represent negligence or departure from the recognized standard of care."    

On February 24, 1999, Dr. Fisher wrote defense counsel that, several years earlier, he had seen Mary at the request of Taxman.  Dr. Fisher told Taxman that he could not find a basis for concluding that Dr. Bradley had been negligent.  When contemnor later contacted him to review additional records, Dr. Fisher made his position clear to contemnor that his opinion was unlikely to change.  After reviewing the records and Dr. Bradley's deposition testimony, Dr. Fisher wrote contemnor that he could not find anything negligent in Dr. Bradley's care of Mary and declined to participate further.  Dr. Fisher wrote, "I have not agreed to serve as an expert witness in this case.  If Mr. Olson has listed me as his expert, he is mistaken."

Dr. Bradley moved to withdraw his answer and dismiss the complaint on March 4, 1999, because the "purported" written report attached to the complaint did not contain Dr. Fisher's signature, and Dr. Fisher stated in his February 24 letter to defense counsel that it had been his opinion that Dr. Bradley's care of Mary had not been negligent, contrary to the written report.  Dr. Bradley argued that the report was invalid and the complaint was subject to dismissal under sections 2-622 (a) (1) and 2-622 (g) of the Code.  735 ILCS 5/2-622 (a) (1), (g) (West 1998).  At a hearing on March 4, 1999, there was a discussion concerning Dr. Fisher's February 24 letter.  The judge stated that it appeared a false medical report was attached to the complaint and ordered that Dr. Fisher be deposed. 

Dr. Fisher testified at his deposition on May 5, 1999, that he had no recollection of the report attached to the complaint and that it was not a product of his writing.  After reviewing the report, he concluded: "So I have not only no recollection of this, but I disagree with much of the content."  He did not "recognize any sentence" that he "would have phrased or written."  He repeated that he never agreed to be an expert witness.

On May 24, 1999, plaintiff responded that Dr. Fisher had examined her in 1996 and rendered certain criticisms of Dr. Bradley.  Plaintiff claimed the report met the requirements of section 2-622 of the Code (735 ILCS 5/2-622 (West 1998)), which does not require that the physician author the report. 

On June 24, 1999, the court found that allegations (a), (c) and (d)
 in Dr. Fisher's medical report attached to the complaint did not accurately reflect Dr. Fisher's opinions or observations; that contemnor was on notice that the affidavit filed by plaintiffs' original attorney was "at minimum, inaccurate"; that contemnor did nothing to correct the inaccuracy or notify the court; that contemnor had a duty to notify the court of the problems with the medical report; and that his failure to withdraw the report was sanctionable under Supreme Court Rule 137 (155 Ill. 2d R. 137) and section 2-622(e) of the Code.  The court ordered contemnor to pay fees and costs associated with the motion and Dr. Fisher's deposition.  The court found that the pleading was false and that contemnor knew it.

 Contemnor filed a motion for reconsideration, arguing that Rule 137 was not applicable because contemnor had not authored, signed or filed the pleadings, and he could reasonably rely on predecessor counsel to inform him of the facts.  Contemnor maintained that section 2-622 (e) of the Code was not applicable because, even if the affidavit or medical report were untrue, he did not prepare them.  He also maintained that he was not obligated to amend the earlier pleading when additional facts were learned.  Contemnor stated that the person who filed the original pleading should be sanctioned, not the party's subsequent representative, and that he could not be sanctioned for not disclosing Dr. Fisher's changes in his opinions.  Contemnor also argued that the medical report was not fraudulent and not a false pleading.  In support he offered the March 4, 1999, affidavit of Brian Hurst.  Hurst stated that he had learned of Dr. Fisher's opinion in a telephone call with him and from an August 11, 1996, letter from Dr. Fisher to Taxman.  But Hurst admitted that the language used by Dr. Fisher in the August 11 letter was different from the language used in the report. 

The court found that only subsection (b) of the report may have been authorized by Dr. Fisher, and that contemnor was on notice that the original section 2-622 report was inaccurate, but he did nothing to correct the inaccuracy or notify the court.  The court ordered contemnor to pay defendant $3,220 for false pleading.  The court then found contemnor in contempt when he refused to pay and fined him $100 to facilitate an appeal.  Plaintiffs voluntarily dismissed their action.

The trial court's ruling on Rule 137 sanctions is entitled to considerable deference and will not be disturbed on review, absent a showing of an abuse of discretion.  
Mandziara v. Canulli
, 299 Ill. App. 3d 593, 601-02 (1998).  Whether Rule 137 has been violated is reviewed under the manifest weight of the evidence standard.  
In re Estate of J.M.
, 287 Ill. App. 3d 110, 115 (1997).  Contemnor argues that, even if the pleading was fraudulent, he was not responsible because Rule 137 applies only to the attorney who actually filed the pleading.  But an attorney has a professional duty to promptly dismiss a lawsuit when he learns the client has no case.  
In re Custody of Caruso
, 185 Ill. App. 3d 739, 744 (1989).  Dismissal for failure to file the documents required by section 2-622 is designed to reduce the number of frivolous suits filed and eliminate such actions at an early stage before litigation expenses have mounted.  
DeLuna v. St. Elizabeth's Hospital
, 147 Ill. 2d 57, 65 (1992).

Contemnor first argues that Rule 137 and section 2-622 sanctions apply only when an untrue pleading or paper is filed, that section 2-622 (e) of the Code applies only to the attorney's affidavit, and that he personally did not file the medical report, which was filed long before he became involved in the case.  He says that 
Hernandez v. Williams
, 258 Ill. App. 3d 318 (1994), supports his argument the court should focus on the facts and circumstances at the time of the signing or filing of the pleading.  
Hernandez
 is inapplicable to the facts of this case.  Here, the court found that contemnor's failure to promptly notify the court when he discovered the medical report was false was sanctionable conduct.

The section 2-622 attorney affidavit is not considered a part of the complaint for all purposes.  
Garrison v. Choh
, 308 Ill. App. 3d 48, 57 (1999).  But section 2-622(e) specifically provides: "Allegations and denials in the affidavit, made without reasonable cause and found to be untrue, shall subject the party pleading them or his attorney, or both, to the payment of reasonable expenses, actually incurred by the other party by reason of the untrue pleading, together with reasonable attorneys' fees***."  735 ILCS 5/2-622 (e) (West 1998).  Both this section and Rule 137 authorize sanctions in connection with filing a section 2-622 affidavit and medical report not "well grounded in fact" or based on the belief of an attorney or party formed after reasonable inquiry (155 Ill. 2d R. 137), or "made without reasonable cause and found to be untrue" (735 ILCS 5/2-622 (e) (West 1998)).  We find no support for the argument that the medical report was not within the purview of the Code.

We conclude that contemnor had a duty to notify the court of the false medical report.  In 
Walsh v. Capital Engineering & Manufacturing Co.
, 312 Ill. App. 3d 910 (2000), the court found an attorney has a continuing duty of inquiry throughout the pendency of litigation.  When plaintiff's expert testified at his deposition that six allegations were no longer an issue based on his review, plaintiff's attorneys should not have claimed to have other evidence to support these allegations, but should have been "forthcoming" with counsel and the court about the expert's current negative opinion concerning those specific allegations.  In reversing a denial of Rule 137 sanctions, the 
Walsh
 court said:

"Thus, we hold that a litigant cannot expect to avoid all sanctions under Rule 137 merely because the pleading was not entirely frivolous.  Moreover, when the invalidity of an allegation or claim becomes known to the signing party prior to trial, that party has an obligation to act in good faith with both opposing counsel and the court."  
Walsh
, 312 Ill. App. 3d at 919.

We agree with 
Walsh
 that an attorney has a duty to update the pleadings.  We find contemnor's argument that he did not personally sign the affidavit unpersuasive.  Section 2-622 clearly permits sanctions against a litigant who submits a frivolous pleading, even if the pleading was signed by the litigant's attorney and not by the litigant herself.  Though counsel has a duty to make reasonable inquiry before filing a pleading, the duty of reasonable inquiry does not end there.  A successor attorney cannot hide behind his predecessor.  Just as a party is ultimately responsible for the pleadings filed by his attorney on his behalf, a successor attorney inherits from his predecessor the duty to update.  "Rule 137 does not require counsel to amend or withdraw a paper or pleading if he discovers, after signing, that it is unfounded.  An attorney need not revise the pleadings to conform with newly discovered information."  
Walsh
, 312 Ill. App. 3d at 916, citing 
Chicago Title & Trust Co. v. Anderson
, 177 Ill. App. 3d 615, 626 (1988).  However:

"[C]ounsel cannot simply remain silent when faced with *** newly discovered information, file additional papers with the court that do not reveal the more recent discoveries, and by such silence allow court and opposing counsel to draw erroneous conclusions or proceed on improper assumptions.  Instead, once it appears that the prior factual allegation is in error, this must be brought forthrightly to the attention of court and opposing counsel, at the least in the next available court filing."  
Chicago Title
, 177 Ill. App. 3d at 626-27 (1988).

In this case, contemnor did not "forthrightly" bring the false medical report to the attention of the court and opposing counsel.  Instead, defense counsel was notified by Dr. Fisher, and the trial court was notified when defendant filed his motions to withdraw his answer and dismiss the complaint.

Contemnor claims the medical report was not fraudulent, inaccurate or conclusory.  We agree with the trial court that, by the time of Dr. Fisher's February 24, 1999, letter to defense counsel, contemnor knew that Dr. Fisher had not found fault with Dr. Bradley's treatment, contrary to the statements attributed to Dr. Fisher in the section 2-622 medical report filed with the complaint.  Consequently, contemnor knew that the medical report was false.  We also agree that contemnor failed to notify the court or correct the false pleading when he became aware of it from Dr. Fisher's January 17, 1999, letter, which stated, "I still cannot find a basis for declaring anything that Dr. Bradley did or failed to do to represent negligence or departure from the recognized standard of care."  As the trial judge said, "You became aware of a false pleading and you did nothing." 

Contemnor next argues that his conduct was reasonable.  He argues, "assuming arguendo that the medical report was fraudulent," the court was obligated to review the reasonableness of contemnor's conduct at various stages of the case.  Minimizing the importance of the section 2-

622 requirement, contemnor argues that Dr. Fisher wrote to Taxman in 1996, criticizing plaintiff's consent to the surgery, but did not state that Dr. Bradley was negligent.  Dr. Fisher subsequently made clear to contemnor that he never agreed to be plaintiff's expert.  While contemnor argues that none of the specifications in the medical report was unauthorized, we agree with the trial court's analysis that Dr. Fisher's deposition testimony shows he did not concur with at least three of the four statements.  It is a fair inference that these statements were false and that Dr. Fisher never authorized them.  Because contemnor knew the statements were false and did not inform the court or take other action until prompted by the motion to dismiss, he did not act reasonably and sanctions were appropriate.

We affirm the order of the circuit court imposing $3,220 as a sanction on contemnor.  Because the record shows that contemnor sought the contempt finding merely to facilitate this appeal, we vacate the contempt order and the $100 fine imposed for contempt.  
SK Handtool Corp. v. Dresser Industries, Inc.
, 246 Ill. App. 3d 979, 1001 (1993).

Affirmed in part and vacated in part.

WOLFSON and BURKE, JJ., concur.