# Illinois Official Reports

## Appellate Court

---

*American Access Casualty Co. v. Alcauter*, 2017 IL App (1st) 160775

---

| | |
|---|---|
| Appellate Court Caption | AMERICAN ACCESS CASUALTY COMPANY, Plaintiff-Appellant, v. JOSE ALCAUTER, KIMBERLY KREBS, and THE VILLAGE OF BROADVIEW, Defendants (Kimberly Krebs, Defendant-Appellee). |
| District & No. | First District, Fourth Division<br>Docket No. 1-16-0775 |
| Rule 23 order filed<br>Rule 23 order<br>withdrawn<br>Opinion filed | December 22, 2016<br><br>January 26, 2017<br>February 9, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-CH-22883; the Hon. Thomas R. Allen, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James P. Newman, of James P. Newman & Associates LLC, of St. Charles, for appellant.<br><br>Barry S. Silver and Robin M. Winer, of Barry S. Silver PC, of Riverwoods, for appellee. |

| Panel | PRESIDING JUSTICE ELLIS delivered the judgment of the court, with opinion. |
| --- | --- |
| | Justices Howse and Burke concurred in the judgment and opinion. |

**OPINION**

¶ 1     Plaintiff American Access Casualty Company (AACC) appeals from the trial court's imposition of sanctions against it and its coverage counsel, James Newman, pursuant to Illinois Supreme Court Rule 137 (eff. July 1, 2013). The trial court imposed sanctions in relation to AACC's declaratory judgment action, which sought a declaration that AACC was not required to provide coverage for its insured, defendant Jose Alcauter, for an automobile accident. AACC's coverage action was premised on the fact that Alcauter willfully failed to cooperate with an arbitration hearing pursuant to the policy's cooperation clause. But at trial on AACC's declaratory judgment action, it was revealed that, at the time of the arbitration hearing, Alcauter was in jail for an unrelated offense. Consequently, Alcauter could not possibly have willfully failed to cooperate with the arbitration.

¶ 2     Defendant Kimberly Krebs, the other driver involved in the car accident with Alcauter, filed a motion for sanctions against AACC and Newman, arguing that she had informed Newman of Alcauter's arrest and detention prior to trial and that AACC proceeded to trial anyway. The trial court granted Krebs's request for sanctions.

¶ 3     AACC appeals, arguing that Newman reasonably relied on the representations of counsel assigned to represent Alcauter at the arbitration that Alcauter had been contacted about the arbitration. While conceding that the facts did not support its declaratory judgment action, AACC argues that it should not be faulted simply for advocating a losing cause.

¶ 4     We affirm the imposition of sanctions. The record shows that, well before the scheduled trial date, Newman was informed of the possibility that Alcauter had been incarcerated. Yet Newman did no serious investigation of that possibility and failed to forthrightly bring Alcauter's arrest to the attention of the trial court. Instead, AACC and Newman elected to proceed to trial, knowing that its declaratory judgment claim lacked factual support.

¶ 5                                          I. BACKGROUND

¶ 6     AACC issued an automobile insurance policy to Alcauter that included a cooperation clause requiring Alcauter to assist AACC "in making settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of any legal proceedings in connection with the subject matter of [the policy]." The policy said that AACC could deny Alcauter coverage in the event that he failed to cooperate with AACC in any legal proceeding.

¶ 7     On September 30, 2011, Alcauter and Krebs got into a car accident with each other, which led to Krebs pursuing arbitration against Alcauter. But Alcauter did not appear at the arbitration hearing. The arbitrators' award indicates that "no evidence was presented" at the hearing and that Alcauter did not appear "despite having received a [Illinois Supreme Court Rule 237 (eff. July 1, 2005)] notice to appear." The arbitration panel awarded Krebs $10,000, which was confirmed in the trial court.

¶ 8        On October 8, 2013, AACC filed a declaratory judgment complaint, seeking a declaration that it was not required to cover the $10,000 judgment because Alcauter had failed to cooperate with the arbitration. The complaint alleged that Alcauter "was given notice of the mandatory arbitration date and time" and that Alcauter failed to appear at the arbitration hearing "despite notice of the same." AACC alleged that Alcauter's failure to appear constituted a material breach of the cooperation clause.

¶ 9        Alcauter failed to appear in the declaratory judgment action, and on January 17, 2014, the trial court found him to be in default.

¶ 10       On October 17, 2014, AACC moved for summary judgment on its declaratory judgment complaint. In the motion, AACC alleged that it requested that Alcauter attend and assist with the arbitration and that Alcauter received "ample notice of the mandatory arbitration date and time by both his counsel and by AACC." Specifically, AACC alleged:

> "[A]t least two letters, mailed on March 27, 2013 [and] May 9, 2013, were sent to Alcauter's verified address by his counsel, and at least one letter was sent to Alcauter by AACC on May 8, 2013. *** Notably, none of the letters were returned by the post office. *** Furthermore, Alcauter's counsel called [his] client approximately 24 hours prior to the arbitration to remind him to attend. *** Still, Alcauter failed to appear for the mandatory arbitration, [and] counsel was unable to present Alcauter's version of the events, which specifically were that [Krebs] was traveling too fast for conditions and not paying attention."

AACC's coverage counsel, James Newman, signed the motion.

¶ 11       AACC attached an affidavit from Cliff Panek, an attorney at the law firm retained to represent Alcauter at the arbitration. Panek said that his firm followed "certain procedures" when preparing for arbitration, including sending its clients two letters informing them of the date and time of the arbitration hearing and calling their clients 24 hours before the hearing. Panek attested that he found the two letters in Alcauter's case file and that he did not find a motion to continue the arbitration in the file. According to Panek, the absence of a motion to continue showed that, "based upon [his firm's] practice and procedures, [the firm] called Jose Alcauter the day before the arbitration and confirmed his attendance."

¶ 12       At the hearing on AACC's motion for summary judgment on March 9, 2015, Newman asserted that Alcauter "received a phone call approximately 24 hours before the arbitration in which he confirm[ed] his attendance." Newman argued that "there [was] no dispute *** that [Alcauter] was aware of the arbitration and he didn't attend." The court denied the motion for summary judgment, noting that it had "some unanswered questions *** that raise issues of fact as to the notice," particularly the telephone call.

¶ 13       On May 12, 2015, AACC filed a list of witness and trial exhibits it planned to present at trial.

¶ 14       The declaratory judgment case proceeded to a bench trial on May 20, 2015. At trial, Panek testified that AACC had retained him to represent Alcauter in the arbitration. He testified that he was "in charge of the file" but that another attorney was actually assigned to arbitrate the case. Panek also testified that he did not have any recollection of the particular case.

¶ 15       Panek identified the letters sent to Alcauter to inform him of the arbitration hearing date. Panek testified that it was his firm's practice to call a client 24 hours in advance of an arbitration to confirm the client's attendance. Panek said that the fact that Alcauter's case file

did not include a motion to continue the arbitration told him that his firm had spoken to Alcauter and that "he confirmed that he would be present at the arbitration."

¶ 16    On cross-examination, Panek said that he knew there were websites for the Cook County jail and the Illinois Department of Corrections (IDOC) that he could use to check if someone was in custody and that he and his staff had used them in the past. He could not recall if either of those websites were checked for Alcauter and said that there would have been "no reason to." Panek also testified on cross-examination, that his firm's policy was to call its clients twice before arbitration, not once. Panek could not recall if he talked to Alcauter.

¶ 17    Rick Lionello, a litigation specialist for AACC, testified that he mailed Alcauter a letter, reminding him of the arbitration two weeks before its scheduled date, and that the letter was not returned. He also testified that the attorney retained to represent the insured, not AACC, is responsible for providing notice of any hearings to the insured.

¶ 18    Krebs admitted a transcript from Alcauter's March 11, 2014, guilty plea hearing, where he pled guilty to aggravated criminal sexual assault and predatory criminal sexual assault. At the hearing, the trial court awarded Alcauter "credit for 330 days time served."

¶ 19    Krebs introduced a certified copy of the information, charging Alcauter with aggravated criminal sexual assault and predatory criminal sexual assault. The information listed Alcauter's arrest date as April 16, 2013, and his arraignment date as June 5, 2013. A certified copy of the order setting Alcauter's bond showed that, on April 17, 2013, Alcauter's bail was set at $500,000 and that Alcauter was ordered to remain in custody.

¶ 20    Krebs also introduced several documents from the IDOC, showing that Alcauter had entered into IDOC custody on March 13, 2014. The custodian of the IDOC's records, who testified to establish the foundation for those records, indicated that the same information is available to the public via the IDOC website.

¶ 21    In all of the documents relating to the criminal case, Alcauter's name was listed as "Jose Alcauter-Cruz." But Krebs identified Alcauter's photograph among the IDOC records. And the IR numbers and date of birth listed on the documents displaying Alcauter's photograph matched the other documents relating to the case.

¶ 22    The court ruled that AACC owed coverage. The court found that the documents produced by Krebs were "solid evidence" showing that Alcauter was in jail on April 16, 2013. The court credited Krebs's identification of Alcauter on the arrest report. The court also rejected the notion that any phone call had been made to Alcauter, saying, "Nobody made a phone call. It's outrageous to come in here and say you made a phone call on May 23rd" and characterizing the testimony regarding the phone call as "imaginary" and "bogus." The court found that AACC's evidence "just flat out [did not] hold water against the evidence that [Alcauter] was in jail." AACC paid the judgment.

¶ 23    Following the bench trial, Krebs filed a motion for sanctions pursuant to Rule 137 against AACC and Newman. Krebs noted that AACC's entire case in the declaratory judgment action hinged on Alcauter's willful failure to appear at the arbitration hearing. Krebs argued that AACC had failed to conduct a reasonable inquiry into Alcauter's whereabouts because, if it had, it would have found out that he was incarcerated. Thus, Krebs argued, AACC pursued a lawsuit that was not grounded in fact and into which AACC had failed to conduct a reasonable inquiry. Krebs also noted that, in AACC's motion for summary judgment and reply in support of the motion for summary judgment, Newman falsely asserted that Alcauter had confirmed

- 4 -

that he would attend the arbitration without conducting a reasonable inquiry into the basis for that claim.

¶ 24    Krebs attached a letter from her attorney, dated April 9, 2015, and addressed to Newman. The letter listed the criminal case against Alcauter, including the case number. The letter also listed each of the exhibits that Krebs intended to introduce at trial, including the arrest report, prisoner data sheet, information, and IDOC documents.

¶ 25    In response, AACC argued that the documents relating to Alcauter's incarceration had not been submitted to Newman until May 11, 2015, nine days before trial. AACC said that it offered to pay the judgment in full but that Krebs declined to accept that offer. And AACC argued that there was nothing unreasonable about relying on the information given to them by Panek regarding his firm's efforts to secure Alcauter's attendance.

¶ 26    AACC attached an affidavit from Newman, attesting to the foundation for several emails between him and Krebs's counsel. In an email dated May 11, 2015, Krebs's counsel directed Newman's attention to "attached correspondence and its enclosures." In an email the next day, Krebs's counsel noted that those enclosures showed that Alcauter "was/is incarcerated." In response to the document, Newman asked Krebs's counsel for a settlement demand. Krebs's counsel replied with a request for the judgment ($10,000), plus costs and interest. Newman rejected that offer and proposed a $10,000 settlement. Krebs's counsel rejected the $10,000 offer.

¶ 27    In her reply in support of the sanctions motion, Krebs stated that she sent the records of Alcauter's incarceration to Newman via certified mail on April 9, 2015, and that Newman signed the certified mail receipt on April 13, 2015. Krebs attached the certified mail receipt to her reply, which showed that Newman signed for the letter on April 13, 2015.

¶ 28    At the hearing on the Rule 137 motion, Newman said that he did not receive the information about Alcauter's incarceration until "the eve of trial." The court asked Newman to clarify when he got the information, and he replied, "As I recall, probably about maybe three weeks before trial." The court asked why Newman did not dismiss the case when he learned that Alcauter might have been in jail, and Newman noted that he offered to settle the case for the full amount of the judgment. The court rejected the notion that the settlement offer was relevant:

> "You keep going back to the [offer], but the [offer] is not the cause of action. The cause of action is your *** action that you, as an attorney, are proffering to the Court and you are presenting evidence on this thing and you know the evidence is bogus. The guy is locked up. And you just admitted now that, 'Oh, don't worry. When we hear he is locked up, we knew we were wrong, so we were going to pay them off. Therefore, that absolves us. If they didn't take the [$10,000], then that absolves us.' You continue to go ahead with the trial knowing that."

At the hearing, Newman conceded that he did not believe that anyone made a phone call to Alcauter in jail about the arbitration.

¶ 29    After taking the Rule 137 motion under advisement, the trial court issued a nine-page order imposing sanctions against AACC and Newman for $12,678.75 in attorney fees and $865.95 in costs. The court found that AACC presented "zero competent evidence to support its contention that Alcauter willingly refused to cooperate." The court found that the evidence of the firm's "custom and practice was utilized in order to keep the real people who allegedly had

contact with Alcauter out of the courtroom and off the witness stand." The court also said that the notion that someone had called Alcauter "was a big lie."

¶ 30  The court stated that, once he learned of Alcauter's possible incarceration, Newman "had a duty to withdraw the action and not proceed to trial." The court found that Krebs's counsel had delivered the documentary evidence of Alcauter's incarceration to Newman on April 13, 2015, "six weeks before trial."

¶ 31  When the court pronounced its ruling on the Rule 137 motion in open court, the court added, "[W]hen the lawyers [for AACC] put the evidence on, they knew it. They knew it was a zero. They knew it was pretend evidence. They knew *** it was comprised of smoke and mirrors, and I just don't get it." The court also noted that Newman had "easy access" to the information on Alcauter's incarceration via the IDOC website.

¶ 32  AACC filed this appeal from the court's award of sanctions.

¶ 33                                                    II. ANALYSIS

¶ 34  In this appeal, AACC does not challenge any aspect of the trial on its declaratory judgment action. Instead, the sole issue is the propriety of the court's imposition of sanctions pursuant to Rule 137.

¶ 35  Rule 137 requires that a party's attorney of record sign every pleading, motion, or other document filed by the party. Ill. S. Ct. R. 137(a) (eff. July 1, 2013). The attorney's signature on a pleading "constitutes a certificate by him that he has read the pleading ***; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact." *Id.* If an attorney signs a pleading in violation of this rule, the court may sanction either the attorney, the party he represents, or both, "which may include an order to pay to the other party or parties the amount of reasonable expenses incurred because of the filing of the pleading ***, including a reasonable attorney fee." *Id.*

¶ 36  The parties dispute the proper standard of review applicable to a trial court's decision to issue Rule 137 sanctions. AACC cites *Nissenson v. Bradley*, 316 Ill. App. 3d 1035, 1040 (2000), for the proposition that the decision to sanction an attorney or party under Rule 137 is reviewed under the manifest-weight-of-the-evidence standard. Krebs disagrees, arguing that a decision to issue Rule 137 sanctions may only be reversed if the trial court abuses its discretion.

¶ 37  Krebs is correct. The Illinois Supreme Court has consistently held that the decision to impose Rule 137 sanctions is committed to the discretion of the trial court and that such a decision will not be disturbed absent an abuse of discretion. *Lake Environmental, Inc. v. Arnold*, 2015 IL 118110, ¶ 16; *Morris B. Chapman & Associates, Ltd. v. Kitzman*, 193 Ill. 2d 560, 579 (2000); *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 487 (1998).

¶ 38  We would note that, before the court in *Nissenson* mentioned the manifest-weight standard, the court wrote that a "ruling on Rule 137 sanctions is entitled to considerable deference and will not be disturbed on review, absent a showing of an abuse of discretion." *Nissenson*, 316 Ill. App. 3d at 1040. Perhaps *Nissenson* was suggesting that any factual findings in a Rule 137 determination are subject to a manifest-weight standard, but that the ultimate decision to impose sanctions is subject to an abuse-of-discretion standard. Regardless, we will follow supreme court precedent, which has consistently applied an abuse-of-discretion standard in reviewing a ruling on a Rule 137 motion. We would add that our decision in this

case would be the same, regardless of whether we applied a manifest-weight standard or reviewed it for an abuse of discretion.

¶ 39    We now turn to the merits of AACC's appeal. To establish that an insured breached a cooperation clause in an insurance policy, the insurer must show that it exercised "a reasonable degree of diligence in seeking the insured's participation and that the insured's lack of participation represented a willful refusal to cooperate." *American Access Casualty Co. v. Alassouli*, 2015 IL App (1st) 141413, ¶ 25. If Alcauter was incarcerated, AACC could not show that Alcauter willfully refused to cooperate in the arbitration. Thus, Alcauter's incarceration deprived AACC of the factual basis for its coverage action. AACC does not dispute this point.

¶ 40    The question in this case, then, is whether Newman, AACC's attorney, reasonably inquired into the basis for pursuing the declaratory judgment suit. See Ill. S. Ct. R. 137(a) (eff. July 1, 2013) (requiring attorney to make "reasonable inquiry" into facts underlying pleading before filing it). In answering that question, we must strictly construe Rule 137, as it is a penal rule. *Dowd & Dowd*, 181 Ill. 2d at 487.

¶ 41    AACC argues that Rule 137 sanctions were inappropriate in this case because Newman was not aware of Alcauter's incarceration at the time he signed the motion for summary judgment. Rather, AACC notes, the information regarding Alcauter's incarceration did not come to Newman's attention until after the motion for summary judgment had been denied, and the case was proceeding to trial. AACC, citing *In re Marriage of Oleksy*, 337 Ill. App. 3d 946, 949 (2003), notes that Rule 137 is "aimed at the pleadings and papers—the work product, if you will—of attorneys." AACC reasons that, since Newman was unaware of Alcauter's possible incarceration at the time he filed the motion for summary judgment, none of the factual assertions in that pleading can properly be construed as a misrepresentation.

¶ 42    AACC's interpretation of Rule 137 is too narrow. The Illinois Supreme Court has stated that Rule 137 carries an implicit requirement "that an attorney promptly dismiss a lawsuit once it becomes evident that it is unfounded." (Internal quotation marks omitted.) *Lake Environmental*, 2015 IL 118110, ¶ 13. And this court has held that an attorney must " 'forthrightly' " inform the trial court when he receives information that disproves the allegations of an already-filed pleading. *Nissenson*, 316 Ill. App. 3d at 1041 (quoting *Chicago Title & Trust Co. v. Anderson*, 177 Ill. App. 3d 615, 627 (1988)). While an attorney need not amend or withdraw a pleading if, after filing it, he discovers that it is unfounded, he must bring the erroneous factual allegation " 'to the attention of [the] court and opposing counsel, at the least in the next available court filing.' " *Walsh v. Capital Engineering & Manufacturing Co.*, 312 Ill. App. 3d 910, 916 (2000) (quoting *Chicago Title & Trust*, 177 Ill. App. 3d at 627).

¶ 43    For example, in *Walsh*, this court held that the plaintiff's attorney violated Rule 137 when he failed to inform the trial court that certain allegations of a complaint, which were based on a report of an accountant, no longer had factual support when the accountant testified in a deposition that he had changed his mind. *Walsh*, 312 Ill. App. 3d at 913-14, 916-18. While recognizing that the plaintiff's attorney did not have to withdraw or amend the complaint, the court stated that he was "obliged to be forthcoming with both counsel and the court about his expert's current negative opinion of [the] allegations—which he was not." *Id.* at 916. Instead of informing the court and opposing counsel, the plaintiff's attorney opposed a partial motion for summary judgment aimed at the allegations, claimed he had other evidence to support his claims (which he did not), and proceeded to trial on those allegations. *Id.* at 916-17. The court

noted that "[t]he consequence of [counsel's] untenable position was that defense counsel was required to prepare for trial on all the allegations in the complaint, most of which were technical and complicated and required significant efforts and resources to rebut." *Id.* at 917. The court stressed that, "to pursue this claim with all allegations intact coupled with the knowledge [that] there was no competent evidence to support said allegations renders the pleading, at least in part, harassing and vexatious, the very conduct which Rule 137 seeks to prevent." *Id.* at 917-18.

¶ 44    Similarly, in *Nissenson*, the plaintiff filed a medical malpractice complaint supported by a medical report. *Nissenson*, 316 Ill. App. 3d at 1037-38. In a letter to the plaintiff's attorney, the doctor who had allegedly authored the report said that he had no basis for saying that the defendant had acted negligently. *Id.* at 1038. About two months later, the defendant moved to dismiss the complaint on the basis that the report was invalid. *Id.* This court held that the plaintiff's attorney had violated Rule 137 by failing to bring the false medical report to the attention of the court and opposing counsel. *Id.* at 1041-42. Rather than forthrightly informing the court and opposing counsel about the doctor's findings, the plaintiff's attorney did nothing "until prompted by the motion to dismiss." *Id.* at 1042.

¶ 45    In this case, like the attorneys in *Walsh* and *Nissenson*, Newman failed to forthrightly bring Alcauter's incarceration to the court's attention when he learned of it. Krebs's counsel sent the evidence of Alcauter's incarceration to Newman on April 13, 2015, as evidenced by the certified mail receipt signed by Newman. For 29 days, Newman did nothing. Then, instead of bringing Alcauter's incarceration to the court's attention—or at the very least, asking for more time to investigate the possibility that Alcauter had been in jail—Newman filed a witness and exhibit list in anticipation of going to trial. Newman then proceeded to put Krebs through the process of a bench trial on May 20, 2015, all the while knowing that he had no factual basis to support AACC's position. The trial court did not act unreasonably in concluding that counsel violated Rule 137 by failing to bring Alcauter's incarceration to its attention and subjecting Krebs and the trial court to the time and expense of proceeding to trial.

¶ 46    AACC claims that Newman did not have sufficient time to investigate the possibility that Alcauter had been in police custody before the case went to trial. We reject the notion that, in the six weeks that Newman knew of the possibility that Alcauter was incarcerated, he could not have found out that Alcauter was incarcerated. Newman could have easily checked the IDOC website, as Krebs's counsel did, or obtained any number of public documents chronicling Alcauter's arrest, conviction, and subsequent incarceration. But Newman did not do that. While the criminal case listed Alcauter's name as "Jose Alcauter-Cruz," Newman made little effort to ascertain whether Alcauter had, in fact, been incarcerated. Critically, Newman did not even request to continue the trial so that he could investigate the information that Krebs's counsel sent him. Instead, he went to trial as if nothing had happened. Newman's conduct represents the kind of vexatious and unreasonable behavior that Rule 137 is aimed to punish.

¶ 47    We also reject AACC's suggestion that its settlement offer and payment of the judgment shows that sanctions were inappropriate. While AACC did offer to pay Krebs $10,000, it was still obliged to inform the *court* that Alcauter was incarcerated. AACC's settlement offer and payment of the judgment after trial does not change the fact that it proceeded to trial on a baseless claim.

¶ 48    We also note that AACC takes no issue with the specific amount of sanctions imposed by the trial court. Nor do we see any reason to second-guess that amount. We find no abuse of

discretion here and affirm the trial court's decision to impose Rule 137 sanctions.

¶ 49                                III. CONCLUSION
¶ 50          For the reasons stated, we affirm the trial court's judgment.

¶ 51          Affirmed.