No. 2-09-1074          Filed: 11-29-10

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| GARY CUTLER, Independent Administrator of the Estate of Mary Beth Cutler, Deceased, | ) ) ) | Appeal from the Circuit Court of Boone County |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 05--L--13 |
| NORTHWEST SUBURBAN COMMUNITY HOSPITAL, INC., Indiv. and d/b/a Barix Clinics and Barix Clinics of Illinois; FOREST HEALTH SERVICES CORPORATION, Indiv. and d/b/a Bariatric Treatment Centers of Illinois; BARIATRIC TREATMENT CENTERS OF ILLINOIS, INC., d/b/a Bariatric Treatment Center; ERIC VAUGHN; ROY E. BERKOWITZ; PROCTOR HOSPITAL; and JAMES R. DEBORD, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants-Appellees | ) ) | Honorable |
| (Bariatric Specialists of Illinois, S.C., and Kent Hess, Defendants). | ) ) | John H. Young, Judge, Presiding. |

_____

JUSTICE SCHOSTOK delivered the opinion of the court:

On July 6, 2007, the plaintiff, Gary Cutler, filed his third amended 27-count medical malpractice complaint against the defendants, Northwest Suburban Community Hospital, Inc. (Northwest Suburban), Bariatric Specialists of Illinois, S.C. (Bariatric Specialists), Forest Health Services Corp. (Forest), Bariatric Treatment Centers of Illinois, Inc. (BTC), Dr. Eric Vaughn, Dr. Roy E. Berkowitz, Proctor Hospital (Proctor), Dr. James DeBord, and Dr. Kent Hess, seeking

damages based on the Wrongful Death Act (740 ILCS 180/1 et seq. (West 2004)), the Survival Act (755 ILCS 5/27--6 (West 2004)), and the Rights of Married Persons Act (750 ILCS 65/15 (West 2004)), commonly called the "family expense statute." On September 21, 2009, the trial court dismissed the plaintiff's third amended complaint with prejudice. The plaintiff appeals from that order. We reverse and remand for additional proceedings.

On April 11, 2005, the plaintiff filed his original malpractice action against the defendants. (However, the original complaint named Dr. Hess as a respondent in discovery rather than a defendant.) In his complaint, the plaintiff alleged that on April 13, 2003, his sister, the decedent, was admitted to Northwest Suburban, in Belvidere, for a Roux-en-y gastrojejunostomy surgery that was performed by Dr. Vaughn. Despite a subsequent fever and leukocytosis, the decedent was discharged from Northwest Suburban on April 20, 2003. Both Drs. Vaughn and Berkowitz treated the decedent postoperatively at Northwest Suburban. The decedent allegedly sought additional medical assistance via phone over the next two days. On April 22, 2003, the decedent went to the emergency room at Proctor, in Peoria, with complaints of severe abdominal pain. At Proctor, she was treated by Dr. DeBord, who contacted Dr. Berkowitz for assistance. The decedent died at Proctor on April 24, 2003. Dr. Hess had provided preoperative care to the decedent. The plaintiff alleged that Drs. Vaughn and Berkowitz were employees, agents, or apparent agents of Forest, BTC, and Bariatric Specialists. The plaintiff further alleged that the defendants and/or their employees or agents were negligent in the postoperative care and treatment of the decedent and that their negligence caused her death.

Attached to the complaint was an affidavit from the plaintiff's attorney pursuant to section 2--622(a)(2) of the Code of Civil Procedure (the Code) (735 ILCS 5/2--622(a)(2) (West 2004)),

indicating that the action had not previously been voluntarily dismissed but that she was unable to obtain the requisite reviewing health professional's report before the expiration of the statute of limitations. On April 20, 2005, the plaintiff filed an affidavit and physician's report pursuant to section 2--622(a)(1) of the Code (735 ILCS 5/2--622(a)(1) (West 2004)). On July 7, 2005, all the defendants moved to dismiss the complaint because the plaintiff did not identify the reviewing health professional. Additionally, several defendants asserted that the physician's report was deficient because it did not reveal the physician's specialty or show that the physician had experience in the same area of healthcare as the defendants. Other defendants argued that the report had only general conclusory statements of medical malpractice and failed to specify how the defendants breached the standard of care. In response, the plaintiff argued that he did not have to reveal the name of the reviewing physician and also that, because the physician was a consultant pursuant to Supreme Court Rule 201(b)(3) (210 Ill. 2d R. 201(b)(3)), his identity did not need to be disclosed in the absence of exceptional circumstances. A hearing on the motions to dismiss was scheduled for November 4, 2005.

On October 5, 2005, the plaintiff filed a motion for an evidentiary hearing to convert Dr. Hess to a party defendant and for leave to file an amended complaint. Attached was a new affidavit and a revised reviewing health professional's report. This report set forth how Dr. Hess violated the standard of care. The motion was granted and the hearing was also set for November 4, 2005. On October 10, 2005, the plaintiff filed another section 2--622(a)(1) physician's report, identical to that filed on October 5, 2005, but identifying the certifying health professional as Dr. Rolland W. Taylor. The November 4, 2005, hearing was subsequently continued to December 21, 2005.

On December 21, 2005, the trial court issued an order in relation to a motion to compel previously filed by Dr. Hess, finding that Dr. Taylor was not a consultant within the meaning of Rule 201(b)(3) and that Dr. Hess should have access to Dr. Taylor's notes. The hearing on the plaintiff's motion to convert Dr. Hess to a party defendant was postponed until March 6, 2006. On February 28, 2006, Dr. Hess filed a motion to strike Dr. Taylor's report and be dismissed as a respondent in discovery. Dr. Hess opined that Dr. Taylor did not have the education, experience, and training to opine that Dr. Hess's treatment of the decedent was negligent. In support, Dr. Hess attached Dr. Taylor's January 2006 discovery deposition transcript from the case of Hunt v. Northwest Suburban Community Hospital, No. 03--C--50250 (N.D. Ill. September 2, 2005), which was then pending in the Northern District of Illinois, Western Division. The defendants in that case included Dr. Hess, Northwest Suburban, Forest, BTC, and Bariatric Specialists.

In his January 2006 discovery deposition in the Hunt case, Dr. Taylor testified, in relevant part, that he did not currently perform bariatric surgeries. He did act as a surgical assistant in a Roux-en-y procedure in 2001 or 2002. He was not board certified in internal medicine, did not complete a residency in internal medicine, and never practiced internal medicine. He last practiced in Illinois in 2002. Finally, he testified that he had cared for a postoperative abdominal surgery patient within the last month and had cared for a postoperative bariatric surgery patient within the last six months.

On March 6, 2006, the plaintiff withdrew his motion to convert Dr. Hess from a respondent in discovery to a party defendant. Consequently, the trial court entered an order dismissing Dr. Hess as a respondent in discovery and stating that all other motions directed to the pleadings regarding Dr. Hess were rendered moot. On May 2, 2006, the trial court granted the defendants' motions to dismiss

the plaintiff's complaint without prejudice and ordered that any amended report include the identity of the reviewing health professional. The record does not show that a first amended complaint was ever formally filed. However, on May 31, 2006, the plaintiff filed a "second amended complaint" that included the requisite section 2--622(a)(1) affidavit and physician's report. The report indicated that it was authored by Dr. Taylor.

On June 23, 2006, Dr. DeBord filed a motion to dismiss the counts of the complaint based on the family expense statute, arguing that neither an independent administrator of an estate nor a sibling had standing to sue under that statute. Dr. DeBord also filed an answer. On July 24, 2006, Proctor filed an answer and a motion to dismiss the count directed against it related to the family expense statute. On July 28, 2006, Dr. DeBord filed a motion for clarification and/or reconsideration and to compel, arguing that the trial court's May 2, 2006, order should have required the plaintiff to produce the original signed version of his section 2--622(a)(1) physician's report. On August 2, 2006, Bariatric Specialists, Dr. Vaughn, and Dr. Berkowitz filed an answer to the complaint but subsequently moved to withdraw their answer to the counts related to the family expense statute and joined Proctor's motion to dismiss those counts. On April 3, 2007, Northwest Suburban, Forest, and BTC joined Dr. DeBord's motion to dismiss the counts related to the family expense statute. Shortly thereafter, the remaining defendants joined Dr. DeBord's motion for reconsideration and to compel. On August 23, 2006, Northwest Suburban, Forest, and BTC answered the complaint. In that answer, those defendants raised an affirmative defense alleging that the decedent failed to report all her symptoms and failed to timely seek proper medical treatment.

On November 16, 2006, Dr. DeBord filed a motion for substitution of judge. On November 22, 2006, the trial court entered an order related to the July 28, 2006, motion for

reconsideration/clarification and to compel. The trial court noted that the motion should have been filed within 30 days of its May 2, 2006, order and that it was therefore treating the motion as a petition brought pursuant to section 2--1401 of the Code (735 ILCS 5/2--1401 (West 2006)). The trial court determined that the defendants had not met the threshold requirements of a section 2--1401 petition and therefore denied the defendants' motion. On December 12, 2006, the trial court granted Dr. DeBord's motion for substitution of judge and the case was reassigned.

On March 14, 2007, Bariatric Specialists, Dr. Vaughn, and Dr. Berkowitz filed a motion for leave to file affirmative defenses. As affirmative defenses, those defendants alleged that the decedent failed to seek timely medical treatment and that her failure was more than 50% of the proximate cause of her injuries. On April 4 and 16, 2007, respectively, Dr. DeBord and Proctor moved to file affirmative defenses on the same basis. On July 30, 2007, the trial court entered an order granting (1) the defendants' motions to dismiss with prejudice the counts of the plaintiff's second amended complaint related to the family expense statute; (2) the defendants' motion for leave to file affirmative defenses; and (3) the plaintiff leave to file a third amended complaint. An order was also entered that same day again reassigning the case.

On July 6, 2007, the plaintiff filed his third amended complaint. The 27-count third amended complaint alleged three counts against each individual defendant based on wrongful death, survival, and the family expense statute. The plaintiff acknowledged in the complaint that the counts related to the family expense statute were dismissed but he continued to include those counts so as to "preserve the record for appeal." The third amended complaint was accompanied by an attorney affidavit dated October 5, 2005, and a physician's report that opined only as to how Dr. Hess's treatment of the decedent fell below the applicable standard of care. The defendants filed motions

to dismiss the third amended complaint based on the insufficiency of the physician's report. The plaintiff subsequently filed a motion for leave to file an amended section 2--622(a)(1) report because the wrong report had accidentally been attached to the third amended complaint. On August 17, 2007, the trial court granted the plaintiff leave to file the amended physician's report. That order did not address the defendants' motions to dismiss.

Four days earlier, on August 13, 2007, Northwest Suburban filed a "Suggestion of Bankruptcy" indicating that it had filed for bankruptcy protection pursuant to chapter 11 of the Bankruptcy Code (11 U.S.C. §101 et seq. (2006)) and that the instant case was subject to an automatic stay. On August 17, 2007, the trial court sua sponte ordered the parties to provide authority regarding the effect of Northwest Suburban's bankruptcy and the applicability of the stay to any other defendants. On December 3, 2007, the trial court continued all matters to February 15, 2008, for status. On that date, the bankruptcy stay was lifted. On May 2, 2008, the trial court granted the plaintiff's motion to voluntarily dismiss Bariatric Specialists from the case without prejudice. On June 27, 2008, the trial court granted a motion to withdraw and a new attorney appeared on behalf of Drs. Vaughn and Berkowitz.

On January 28, 2009, the plaintiff filed motions for default against all the defendants, except Bariatric Specialists and Dr. Hess, because they never answered the third amended complaint. In response, the defendants argued that the trial court had never ruled on their motions to dismiss. At a February 17, 2009, hearing on the various motions, the trial court entered an order indicating that the motions would be ruled upon on March 3, 2009. On February 24, 2009, Drs. Vaughn and Berkowitz issued a records subpoena to Dr. Taylor.

On March 3, 2009, the trial court denied the plaintiff's motions for default and denied, in part, the defendants' motions to dismiss the plaintiff's third amended complaint. Specifically, the trial court dismissed only the counts against Bariatric Specialists and Dr. Hess and the counts based on the family expense statute. On that same day, the plaintiff filed a motion to quash the records subpoena issued to Dr. Taylor. The plaintiff argued that the subpoena violated Rule 201(b)(3) because Dr. Taylor was a consultant and that it ran afoul of section 2--622(e) (735 ILCS 5/2--622(e) (West 2004)) because there was no indication that the plaintiff's attorney's affidavit was untrue. On March 9, 2009, Drs. Vaughn and Berkowitz responded to the plaintiff's motion to quash and argued that a different discovery deposition of Dr. Taylor from the Hunt case, taken in September 2005, showed that Dr. Taylor had not performed gastric bypass surgery since 2000 and that between 2002 and 2004 he was not practicing. Drs. Vaughn and Berkowitz further argued that under section 2--622(e) they were entitled to question a reviewing health professional's qualifications if there was a good-faith basis that the qualifications were suspect. The defendants also pointed out that the trial court had determined that Dr. Taylor was not a consultant. On March 12, 2009, the trial court granted the plaintiff's motion to quash, finding that a records subpoena was an improper method by which to seek discovery pursuant to section 2--622(e). The trial court also reiterated that Dr. Taylor was not a consultant pursuant to Rule 201(b)(3).

On March 25, 2009, Drs. Vaughn and Berkowitz filed a motion to depose Dr. Taylor pursuant to section 2--622(e) of the Code. In that motion, they argued that Dr. Taylor's September 2005 discovery deposition in the Hunt case showed that representations in the plaintiff's section 2--622(a)(1) attorney affidavit were inconsistent regarding whether Dr. Taylor was knowledgeable as to the issues in the case. On March 26, 2009, Dr. DeBord filed a motion to reconsider his third

motion to dismiss, based on the September 2005 discovery deposition in Hunt that allegedly showed that Dr. Taylor was not qualified to author a section 2--622(a)(1) physician's report. Drs. Vaughn and Berkowitz later joined in this motion. On March 25, 2009, Northwest Suburban, Forest, and BTC answered the plaintiff's third amended complaint. As an affirmative defense, the defendants argued that the decedent was negligent in failing to timely seek proper medical care. Proctor filed an answer on March 9, 2009, but did not raise any affirmative defenses.

In his September 2005 discovery deposition in the Hunt case, Dr. Taylor testified, in part, that he was a doctor of osteopathy and currently worked as an emergency physician at Southwest Health Center (Southwest), in Platteville, Wisconsin. Southwest had a bariatric surgical practice and he treated postoperative bariatric surgical patients in that emergency room. He was licensed to practice medicine in Illinois and Wisconsin and was board certified in general surgery. Around 1970, he did a rotating internship, where he assisted in several Roux-en-y surgeries. He did a surgical residency, where he performed about 1,800 abdominal surgeries and 6 bariatric bypass gastric exclusion surgeries. Dr. Taylor testified that the risks associated with abdominal surgery include postoperative infections. After his residency, he went into private practice and performed up to 300 abdominal surgeries per year. He worked in family medicine from 1980 to 1992. From 1983 to 1987, he also worked as an emergency physician. From 1994 to 2002, he worked as an in-house trauma surgeon and the procedures he performed were not done under general anesthesia. From 2002 until 2004, he was not practicing medicine due to a personal illness. Most of the abdominal surgeries he performed were prior to 1992. Since 1992, he had performed a handful of abdominal surgeries--such as bowel perforations, liver lacerations, or splenic lacerations. The last time he did a Roux-en-y was about five years ago. He had not participated in gastric stapling since 1992. The last weight-loss

surgical procedure he did was in the 1970s, during his residency. Dr. Taylor acknowledged that he did not have formal bariatric surgical training, had never formulated guidelines or protocols for performance of bariatric surgery, and had never screened a patient for bariatric surgery.

On April 9, 2009, the plaintiff filed a motion to strike the motion to depose Dr. Taylor, arguing that Drs. Vaughn and Berkowitz had waived their right to challenge the section 2--622(a)(1) affidavit and physician's report because extensive hearings and discovery had already occurred. The plaintiff also argued that Dr. Taylor was qualified to author the report. The plaintiff further argued that a reviewing health professional could not be deposed pursuant to section 2--622(e) unless the trial court first found that the section 2--622(a)(1) affidavit was untrue. The plaintiff also filed a response in opposition to Dr. DeBord's motion to reconsider. The plaintiff argued that Dr. Taylor was qualified to author the section 2--622(a)(1) report because Dr. Taylor was a board-certified surgeon, he was well versed in both bariatric surgery and postoperative care, and he had taught and practiced in the same area of medicine within the last six years.

On April 16, 2009, the trial court denied the plaintiff's motion to strike, granted the motion to depose Dr. Taylor, and continued Dr. DeBord's motion to reconsider pending Dr. Taylor's deposition. The trial court specified that the deposition would be limited to Dr. Taylor's qualifications as a section 2--622(a)(1) certifying physician. The plaintiff filed a motion to reconsider. On May 5, 2009, the trial court entered an order denying the motion to reconsider and denying the plaintiff's oral motion to be held in contempt. The order further provided that the plaintiff had to file a written request for a contempt finding. On June 4, 2009, the trial court denied Dr. DeBord's motion to reconsider the March 3, 2009, denial of his motion to dismiss but ordered the plaintiff to produce Dr. Taylor for deposition by July 14, 2009.

On July 14, 2009, Drs. DeBord, Vaughn, and Berkowitz filed motions to dismiss based on the plaintiff's failure to produce Dr. Taylor for deposition, and the plaintiff filed a written request for a contempt finding so that he could immediately appeal the issue of whether he was required to produce Dr. Taylor for a limited deposition. Additionally, on this date, a status hearing was held at which the plaintiff stated for the record his alleged good-faith reasons for refusing to comply with the trial court's order to produce Dr. Taylor. At the hearing, the trial court granted Northwest Suburban, Proctor, Forest, and BTC leave to withdraw their answers and file their own motions to dismiss based on the plaintiff's failure to produce Dr. Taylor.

On August 20, 2009, a hearing was held on the defendants' motions to dismiss and the plaintiff's motion for a contempt finding. After argument, the trial court took the motions under advisement and scheduled a hearing for September 21, 2009, for ruling. On September 16, 2009, the plaintiff filed a motion to strike the defendants' motions to dismiss. The plaintiff argued that there was no basis for the motions or a deposition. The plaintiff attached the January 2006 discovery deposition of Dr. Taylor from the Hunt case. The plaintiff argued that the September 2005 and the January 2006 Hunt depositions showed that Dr. Taylor was qualified to author the physician's report. Additionally, the plaintiff argued that a deposition was improper under section 2--622(e) because the trial court never found that his attorney's affidavit was made without reasonable cause or was untrue.

On September 21, 2009, the trial court granted the defendants' motions to dismiss and dismissed the plaintiff's third amended complaint with prejudice, pursuant to section 2--619 of the Code (735 ILCS 5/2--619 (West 2008)), on two independent grounds. First, the trial court granted the motions as a Rule 219(c) (210 Ill. 2d R. 219(c)) sanction for the plaintiff's failure to produce Dr. Taylor for deposition. The trial court noted that Dr. Taylor was barred from testifying as to his

qualifications, precluding the plaintiff from supporting the physician's report. Additionally, the trial court found that, because the statute of limitations had run, the plaintiff could not amend the report or file a new one and therefore the dismissal was with prejudice. As an alternative basis for dismissal, the trial court found that Dr. Taylor was not qualified to author the physician's report. The trial court noted as follows:

"I have reviewed the particular facts and unique circumstances of this case, specifically the allegations of negligence are all post surgical care failures, that Dr. Taylor's testimony in the Hunt case that he was not practicing in the medical field during the time of this medical care, that upon his return to the medical profession, he has been an emergency room physician only and has done no surgeries under general anesthetic."

The trial court noted that the dismissal on this basis was also with prejudice because the statute of limitations had run and it was too late to file a new report. Following the denial of the plaintiff's motion to reconsider, the plaintiff filed a timely notice of appeal.

The plaintiff raises five issues on appeal. First, the plaintiff argues that the defendants forfeited their right to challenge his section 2--622(a)(1) physician's report. The plaintiff next argues that the trial court erred in granting the motion to depose Dr. Taylor pursuant to section 2--622(e) and in finding that Dr. Taylor was not qualified to author the section 2--622(a)(1) physician's report. The plaintiff also argues that the trial court erred in ordering the deposition of Dr. Taylor because Dr. Taylor was a Rule 201(b)(3) consultant and, under that rule, his identity did not need to be disclosed. Finally, the plaintiff argues that the trial court should have granted his motion to be held in contempt rather than dismissing his complaint with prejudice.

The plaintiff's first contention on appeal is that the defendants forfeited their challenge to the section 2--622(a)(1) physician's report. The plaintiff argues that many of the defendants in this case were also defendants in the Hunt case and had had notice of Dr. Taylor's discovery depositions in the Hunt case since at least 2006. We note that the plaintiff had raised this issue before the trial court in his April 9, 2009, motion to strike the defendants' motion to depose Dr. Taylor. The record reveals that a hearing was held on those motions on April 16, 2009. Following that hearing, the trial court denied the plaintiff's motion to strike. It is well settled that the appellant bears the burden of presenting an adequate record on appeal to support his contentions of error and that any doubts arising from an incompleteness of the record will be resolved against him. Foutch v. O'Bryant, 99 Ill. 2d 389, 391-92 (1984). In the present case, the plaintiff has failed to include a transcript of the hearing on his motion to strike. In the absence of that transcript, we must presume that the trial court's determination that the issue was not forfeited was in conformity with the law and had a sufficient factual basis. See Foutch, 99 Ill. 2d at 391 (in the absence of a transcript from the trial court proceedings, the "appellate court had to presume that the trial court acted in conformity with the law and ruled properly after considering the motion").

Moreover, we note that forfeiture is a limitation on the parties and not on this court. In re Estate of Funk, 221 Ill. 2d 30, 96-97 (2006). Under the circumstances in this case, we would decline to hold that the defendants forfeited their challenge to the plaintiff's section 2--622(a)(1) physician's report. The record reveals that the defendants had been challenging the physician's report in some way since the commencement of this suit. The plaintiff filed his third amended complaint on July 6, 2007. The defendants immediately filed motions to dismiss, again challenging the sufficiency of the section 2--622(a)(1) physician's report. The plaintiff moved to file an amended report and the

trial court granted that request on August 17, 2007. Thereafter, the case was stayed pending Northwest Suburban's bankruptcy proceedings. After the stay was lifted, and while the defendants' motions to dismiss were still pending, Drs. Vaughn and Berkowitz issued a subpoena to Dr. Taylor as a means to challenge his qualifications to author the section 2--622(a)(1) physician's report. After the trial court denied the motions to dismiss and granted the plaintiff's motion to quash Dr. Taylor's subpoena, Drs. Vaughn and Berkowitz immediately filed their motion to depose Dr. Taylor pursuant to section 2--622(e) and Dr. DeBord filed a motion to reconsider his motion to dismiss. Accordingly, the defendants did not forfeit this issue.

In arguing that the defendants forfeited their right to challenge the section 2--622 physician's report, the plaintiff relies on Gulley v. Noy, 316 Ill. App. 3d 861 (2000). In Gulley, the plaintiff had filed his medical malpractice action against the defendants without attaching a reviewing physician's report. Gulley, 316 Ill. App. 3d at 863. Without objecting to the failure to comply with section 2--622, the defendants filed an answer, initiated discovery, and filed a motion for a stay of proceedings. Gulley, 316 Ill. App. 3d at 866. Two and a half years after the complaint was filed, the defendants moved to dismiss the complaint based on the plaintiff's failure to file a section 2--622 physician's report. Gulley, 316 Ill. App. 3d at 866. The trial court granted the motion and dismissed the complaint with prejudice. Gulley, 316 Ill. App. 3d at 866. On appeal, the reviewing court determined that the trial court had erred in dismissing the plaintiff's complaint, because the defendants had forfeited their right to seek dismissal under section 2--622. Gulley, 316 Ill. App. 3d at 866. The reviewing court held that by answering the complaint, initiating discovery, and filing a motion for a stay of proceedings, and by failing to raise an objection to the lack of a physician's

report for two and a half years, the defendants "manifested an intention to overlook Gulley's failure to file" the physician's report. Gulley, 316 Ill. App. 3d at 866.

Unlike the defendants in Gulley, the defendants in the present case had been challenging the section 2--622 physician's report since the commencement of the suit. Furthermore, although discovery had been taken, the present case was still in the pleadings phase. The defendants filed their motions to dismiss shortly after the plaintiff filed his third amended complaint, and Drs. Vaughn, Berkowitz, and DeBord never filed answers to the third amended complaint. Additionally, while the motions to dismiss were pending, Drs. Vaughn and Berkowitz issued a records subpoena to Dr. Taylor as a means to challenge his qualifications. Unlike in Gulley, the defendants in the present case did not manifest an intent to overlook the alleged inadequacy of the plaintiff's section 2--622 physician's report.

The plaintiff's next contention on appeal is that the trial court erred in dismissing his complaint on the basis that Dr. Taylor was not qualified to author the section 2--622(a)(1) physician's report. Pursuant to section 2--622, a plaintiff in a medical malpractice suit must supplement his complaint with: (1) an affidavit, by either an attorney or the plaintiff himself, if pro se, certifying that the affiant consulted with a qualified health care professional in whose opinion "there is a reasonable and meritorious cause for the filing of such action" and (2) a copy of that health professional's written report setting forth the reasons for his determination. 735 ILCS 5/2--622(a)(1) (West 2004); see Schroeder v. Northwest Community Hospital, 371 Ill. App. 3d 584, 595 (2006). Additionally, the affiant must declare as follows:

"That the affiant has consulted and reviewed the facts of the case with a health professional who the affiant reasonably believes: (i) is knowledgeable in the relevant issues

involved in the particular action; (ii) practices or has practiced within the last 6 years or teaches or has taught within the last 6 years in the same area of health care or medicine that is at issue in the particular action; and (iii) is qualified by experience or demonstrated competence in the subject of the case." 735 ILCS 5/2--622(a)(1) (West 2004).

Under the circumstances in the present case, the reviewing health professional must be a physician licensed to practice medicine in all its branches. 735 ILCS 5/2--622(a)(1) (West 2004). The reviewing health professional must set forth his qualifications in his written report. Cuthbertson v. Axelrod, 282 Ill. App. 3d 1027, 1037 (1996).

The purpose of section 2--622 is to eliminate frivolous medical malpractice suits at an early stage. Apa v. Rotman, 288 Ill. App. 3d 585, 589 (1997). "Illinois courts liberally construe a physician's certificate of merit in favor of the malpractice plaintiff and recognize that the statute is a tool to reduce frivolous lawsuits by requiring a minimum amount of merit, not a likelihood of success." Hull v. Southern Illinois Hospital Services, 356 Ill. App. 3d 300, 305 (2005). Section 2--622 should not be mechanically applied to deprive a plaintiff of his substantive rights. Schroeder, 371 Ill. App. 3d at 595. If a section 2--622 physician's report fails to comply with the statutory requirements, the complaint must be dismissed pursuant to section 2--619 of the Code. 735 ILCS 5/2--622(g) (West 2004); Avakian v. Chulengarian, 328 Ill. App. 3d 147, 160 (2002). Accordingly, whether a physician's report complies with section 2--622 is reviewed de novo. Avakian, 328 Ill. App. 3d at 160 (stating that, because section 2--619 dismissals are reviewed de novo, dismissals under section 2--622 are also reviewed de novo). However, the determination as to whether a dismissal under section 2--622 should be with or without prejudice is a matter within the sound discretion of the trial court. Hull, 356 Ill. App. 3d at 305.

In the present case, the trial court erred in finding that Dr. Taylor was not qualified to author the section 2--622(a)(1) physician's report. Dr. Taylor's written report sufficiently set forth the requisite section 2--622(a)(1) qualifications. Dr. Taylor's report indicated that he was licensed to practice medicine in all its branches, was a board-certified surgeon, and held licenses to practice in both Illinois and Wisconsin, although his Illinois license was up for renewal. Dr. Taylor's report also stated that he was familiar with patients undergoing major abdominal surgery, bowel obstructions, postoperative leaks at anastomosis sites, pulmonary conditions after surgery, and the care of postoperative abdominal surgery patients. Dr. Taylor opined that the decedent died from cardiopulmonary collapse secondary to sepsis, as a consequence of a leak from the gastrojejunostomy. As such, Dr. Taylor's report indicated that he was knowledgeable in the relevant issues involved in this particular action and was qualified by experience in the subject of the case. See 735 ILCS 5/2--622(a)(1)(i), (a)(1)(iii) (West 2004).

The circumstances in this case also sufficiently establish that Dr. Taylor had practiced within the last six years in the same area of health care that is at issue in this case. See 735 ILCS 5/2--622(a)(1)(ii) (West 2004). Dr. Taylor's report indicated that he was a board-certified surgeon and had been licensed since 1993 in Wisconsin and 1984 in Illinois. Dr. Taylor indicated that he was familiar with the standard of care applicable to patients such as the decedent. We acknowledge that Dr. Taylor's report did not specifically state the manner in which he had been practicing within the last six years. It has been held that the physician needs to state that he has recent experience in the area of health care at issue. See Cuthbertson, 282 Ill. App. 3d at 1037. However, in Cuthbertson, the reviewing physician's report stated only that the physician was licensed to practice medicine in all its branches, had " 'actively practiced within the last six years,' " and was knowledgeable about the issues

in the case. Cuthbertson, 282 Ill. App. 3d at 1031. Pathology was at issue in Cuthbertson and the report did not state that the reviewing physician was qualified by experience or demonstrated competence in pathology. Cuthbertson, 282 Ill. App. 3d at 1032.

In the present case, however, the issue was alleged postsurgical and emergency care failures following bariatric surgery, and Dr. Taylor's report specifically indicated that he had experience with patients undergoing abdominal surgery and the postoperative care of abdominal surgery patients. Additionally, Dr. Taylor included detailed reasons for his determination that the defendants' conduct fell below the standard of care. Accordingly, we believe that the report in this case complied with the spirit and purpose of the statute and showed that Dr. Taylor was qualified to author a section 2--622(a)(1) physician's report. As stated by this court in Comfort v. Wheaton Family Practice, 229 Ill. App. 3d 828, 832 (1992):

"The technical requirements of this statute should not interfere with the spirit or purpose of the statute. The absence of strict technical compliance with the statute is one of form only and not of substance. The technical requirements of the statute should not be mechanically applied to deprive the plaintiff of her substantive rights. [Citation.] The purpose of the enactment was not to burden the plaintiff with insurmountable hurdles prior to filing but to reduce the number of frivolous lawsuits. [Citation.]"

Moreover, Dr. Taylor's Hunt depositions support a determination that he had practiced in the last six years within the same area of health care at issue. In the September 2005 Hunt deposition, Dr. Taylor testified that within the last six years he had practiced as an emergency room physician at a hospital with a bariatric surgical practice and that he had treated postoperative bariatric surgery patients in the emergency room. In the January 2006 Hunt deposition, Dr. Taylor testified that he had

cared for a postoperative abdominal surgery patient within the last month in the emergency room and that he had cared for a postoperative bariatric surgery patient within the last six months. It has been held that a deposition transcript can be a written report within the meaning of section 2--622 and can be relied upon to satisfy the statutory requirements of the written report. See Moyer v. Southern Illinois Hospital Service Corp., 327 Ill. App. 3d 889, 897 (2002) (stating that "[i]f a deposition transcript shows that the plaintiff has a meritorious claim, the technical requirements of the statute should not interfere with the spirit and purpose of the statute"). Accordingly, the record in the present case demonstrates that Dr. Taylor met the qualifications required by section 2--622(a)(1) to author the written report and render an opinion regarding the merit of the plaintiff's action.

In determining that Dr. Taylor was not qualified to author the section 2--622(a)(1) physician's report, the trial court noted that Dr. Taylor's testimony in the Hunt case revealed "that [Dr. Taylor] was not practicing in the medical field during the time of this medical care, that upon his return to the medical profession, he has been an emergency room physician only and has done no surgeries under general anesthetic." Nonetheless, it is irrelevant whether Dr. Taylor was practicing in the field at the time of the decedent's postsurgical care. Section 2--622(a)(1)(ii) requires only that the reviewing health professional had practiced at some point within the last six years in the same area of health care at issue. See 735 ILCS 5/2--622(a)(1)(ii) (West 2004). Additionally, the fact that Dr. Taylor had not recently performed any surgeries under general anesthesia is also not relevant to this suit, because the complaint did not allege malpractice with respect to the surgery itself. It is undisputed that the subject matter of the complaint involved postsurgical and emergency care failures. The trial court additionally noted that Dr. Taylor was "only" an emergency room physician. However, Dr. Taylor's September 2005 Hunt deposition revealed that in the last six years he had been an emergency room

physician at a hospital with a bariatric surgical practice and that he had treated postoperative bariatric surgical patients in that emergency room.

The plaintiff's next contention on appeal is that the trial court erred in dismissing his complaint as a sanction for the failure to produce Dr. Taylor for a limited deposition as to his qualifications. The trial court granted Drs. Vaughn and Berkowitz's motion to depose Dr. Taylor pursuant to section 2--622(e). Section 2--622(e) provides:

> "(e) Allegations and denials in the affidavit, made without reasonable cause and found to be untrue, shall subject the party pleading them or his attorney, or both, to the payment of reasonable expenses, actually incurred by the other party by reason of the untrue pleading, together with reasonable attorneys' fees to be summarily taxed by the court upon motion made within 30 days of the judgment or dismissal. *** In proceedings under this paragraph (e), the moving party shall have the right to depose and examine any and all reviewing health professionals who prepared reports used in conjunction with an affidavit required by this Section." 735 ILCS 5/2--622(e) (West 2004).

Accordingly, this section authorizes sanctions in connection with filing a section 2--622 affidavit and medical report "made without reasonable cause and found to be untrue." Nissenson v. Bradley, 316 Ill. App. 3d 1035, 1040 (2000).

In Nissenson, the plaintiffs, a patient and her husband, filed a medical malpractice action that included an attorney affidavit and a written medical report pursuant to section 2--622(a)(1) of the Code. Nissenson, 316 Ill. App. 3d at 1037. The medical report was unsigned but included the name and address of a Dr. Fisher. Nissenson, 316 Ill. App. 3d at 1038. After a substitution of counsel for the plaintiffs, their new attorney contacted Dr. Fisher, asking him to review the defendant physician's

deposition. Nissenson, 316 Ill. App. 3d at 1038. Dr. Fisher sent a reply stating that there was no indication that the defendant had been negligent or departed from the standard of care in treating the patient. Nissenson, 316 Ill. App. 3d at 1038. Dr. Fisher also sent defense counsel a letter indicating that, several years earlier, he had met with the patient and ultimately told her attorney that he could not find a basis for concluding that the defendant was negligent. Nissenson, 316 Ill. App. 3d at 1038. The defendant then moved to withdraw his answer and dismiss the complaint on the basis that the written medical report was invalid. Nissenson, 316 Ill. App. 3d at 1038. The trial court ordered that Dr. Fisher be deposed pursuant to section 2--622(e) because it appeared that the medical report attached to the complaint was false. Nissenson, 316 Ill. App. 3d at 1038. Following Dr. Fisher's deposition, the trial court determined that the medical report did not accurately reflect Dr. Fisher's opinions and that the affidavit was " 'at a minimum, inaccurate.' " Nissenson, 316 Ill. App. 3d at 1039. The trial court determined that the plaintiffs' attorney's failure to withdraw the report, after learning of its inaccuracy, was sanctionable pursuant to section 2--622(e). Nissenson, 316 Ill. App. 3d at 1039. Thereafter, the plaintiffs voluntarily dismissed their action. Nissenson, 316 Ill. App. 3d at 1039. On appeal, the reviewing court affirmed the trial court's determination and held that section 2--622(e) clearly permits sanctions against a litigant who submits a frivolous pleading. Nissenson, 316 Ill. App. 3d at 1041.

We find Nissenson distinguishable from the present case and conclude that the trial court erred in ordering that Dr. Taylor be deposed pursuant to section 2--622(e). In Nissenson, there was strong evidence that the medical report at issue was false. In the instant case, however, Dr. Taylor's September 2005 Hunt deposition does not indicate that either the affidavit or the medical report was "made without reasonable cause" or "untrue." In their March 25, 2009, motion to depose Dr. Taylor,

Drs. Vaughn and Berkowitz argued that reasonable grounds existed to question Dr. Taylor's qualifications because, based on the deposition testimony, he was not practicing medicine in 2003, and since 2005 he had been an emergency room physician and not a general surgeon or bariatric surgeon and he "at most" sutured hand lacerations. The defendants further argued that "[a]s an emergency medicine physician, Dr. Taylor would have no opportunity or even privileges to provide postoperative care of patients having undergone bariatric surgery. It goes without saying that he certainly would have no experience in doing so between 2002 and the present."

Nonetheless, as stated above, it is irrelevant that Dr. Taylor was not practicing medicine in 2003. The statute requires only that he had practiced in the same area of medicine within the last six years. See 735 ILCS 5/2--622(a)(1)(ii) (West 2004). Furthermore, Dr. Taylor's deposition testimony revealed that he had been a surgeon for most of his 35-year career, which included postoperative care. Dr. Taylor also testified that within the last six years he had practiced as an emergency room physician at a hospital with a bariatric surgery practice and that he had treated postoperative bariatric surgical patients in that emergency room. Dr. Taylor's deposition testimony does not show that either the plaintiff's attorney's affidavit or Dr. Taylor's written report was "made without reasonable cause" or "untrue." There is nothing in Dr. Taylor's depositions that materially conflicts with his written report or suggests that anything in the written report was fraudulent or untrue. As such, the circumstances in the present case did not rise to the level that would justify a section 2--622(e) deposition of Dr. Taylor.

Our determination is further supported by the legislative history of section 2--622(e). The statute was enacted by Public Act 84--7 (Pub. Act 84--7, eff. August 15, 1985), and section 2--622(e) has never been amended. When it was originally enacted, the identity of the reviewing health

professional did not need to be disclosed. During legislative debate on the proposed act, Representative Preston questioned whether the identity of the reviewing health professional was ever discoverable. 84th Ill. Gen. Assem., House Proceedings, May 23, 1985 (statement of Representative Preston). Representative Daniels stated in response:

> "It's only discoverable if you find that the affidavit filed by that consulting physician was frivolous or if you find that the action itself was frivolous." 84th Ill. Gen. Assem., House Proceedings, May 23, 1985 (statement of Representative Daniels).

This legislative history shows that the legislature's original intent was that a reviewing health professional was to be deposed only if the written report or the action itself clearly had no merit. Those circumstances were present in Nissenson, as the attorney had essentially fabricated the written report. Those circumstances were not present in this case, as there was no evidence that Dr. Taylor's written report was frivolous or that the action itself was frivolous. Accordingly, the trial court erred in ordering that Dr. Taylor be deposed pursuant to section 2--622(e) and therefore erred in dismissing the plaintiff's complaint as a sanction for failing to produce Dr. Taylor.

In so ruling, we note that the plaintiff argues that section 2--622(e) is designed to be used in a postjudgment motion that is to be filed within the 30 days following a final judgment or dismissal. The plain language of the statute tends to support that interpretation. However, under the circumstances in this case we need not decide whether a section 2--622(e) motion may be filed prior to a final judgment or dismissal. It is clear that such a motion may be brought only if there is some basis for believing that the affidavit and written report were made without reasonable cause and were frivolous or untrue. 735 ILCS 5/2--622(e) (West 2004); Nissenson, 316 Ill. App. 3d at 1040. As

stated, that threshold has not been met in this case and the motion was improper regardless of when it was filed.

The defendants argue that dismissal of the plaintiff's complaint was a proper sanction for the plaintiff's continued refusal to produce Dr. Taylor for deposition despite repeated court orders. It is true that a trial court has the inherent authority to dismiss a cause of action with prejudice for failure to comply with court orders. Sander v. Dow Chemical Co., 166 Ill. 2d 48, 67 (1995). However, dismissal of a complaint is a drastic sanction and "is justified only when the party dismissed has shown a deliberate and contumacious disregard for the court's authority." Sander, 166 Ill. 2d at 67-68. The plaintiff's conduct in the present case did not warrant the sanction imposed.

In the present case, the record shows that the plaintiff did not exhibit a deliberate and contumacious disregard for the court's authority. At the July 14, 2009, status hearing, the plaintiff stated, for the record, the specific reasons why he refused to produce Dr. Taylor for deposition. The plaintiff reiterated that he believed that the defendants had forfeited their challenge to his section 2--622 physician's report given that the Hunt depositions were available to many of the defendants in 2006, and none of them challenged the report on that basis until 2009. The plaintiff further stated that he believed that a section 2--622(e) motion to depose could be made only within 30 days after a judgment or dismissal, but not while the case was pending. The plaintiff also believed that he had been deprived of due process because, despite the trial court's denial of the defendants' motions to dismiss, the defendants were still challenging Dr. Taylor's qualifications and refusing to file answers to the complaint. Finally, the plaintiff explained that he did not believe that Dr. Taylor's identity needed to be disclosed, because Dr. Taylor was a Rule 201(b)(3) consultant and because the version

of section 2--622 in effect when he filed his complaint did not require him to disclose the identity of his reviewing health professional.

The foregoing shows that the plaintiff had a good-faith basis for refusing to produce Dr. Taylor for deposition and that his failure to do so was not a "deliberate and contumacious disregard for the court's authority." Moreover, when the plaintiff filed his complaint, there was confusion over whether section 2--622 required the disclosure of the reviewing health professional's identity. The case law at the time indicated that the plaintiff was required to disclose the reviewing health professional's identity. In Giegoldt v. Condell Medical Center, 328 Ill. App. 3d 907, 912 (2002), this court implicitly held that Public Act 90--579 (Pub. Act 90--579, eff. May 1, 1998) reenacted the 1995 version of section 2--622 that had been enacted by Public Act 89--7 (Pub. Act 89--7, eff. March 9, 1995) but later found unconstitutional in Best v. Taylor Machine Works, 179 Ill. 2d 367, 471 (1997), which version required disclosure of the reviewing health professional's identity. However, in O'Casek v. Children's Home & Aid Society of Illinois, 229 Ill. 2d 421, 447 (2008), our supreme court held that Public Act 90--579 did not reenact the version of section 2--622 that was held invalid in Best, and overruled Giegoldt. Based on the determination in O'Casek, the version of section 2--622 in effect when the plaintiff filed his complaint did not require the disclosure of the reviewing health professional's identity. It is well settled that contempt proceedings may be used to test the correctness of a discovery order. Lama v. Preskill, 353 Ill. App. 3d 300, 304 (2004). The plaintiff made an oral request to be held in contempt on May 5, 2009, and made a written request on July 14, 2009. Under the circumstances, the trial court should have granted the request for the contempt finding rather than dismissing the plaintiff's complaint with prejudice.

The plaintiff also argues on appeal that the trial court erred in finding that Dr. Taylor was not a consultant pursuant to Rule 201(b)(3). Specifically, the plaintiff argues that the trial court erred in granting the motion to depose Dr. Taylor because his status as a Rule 201(b)(3) consultant precluded the disclosure of his identity. However, because we have already determined that the trial court erred in ordering that Dr. Taylor be deposed, we need not address this contention.

For the foregoing reasons, the judgment of the circuit court of Boone County is reversed and the cause is remanded for additional proceedings consistent with this opinion.

Reversed and remanded.

ZENOFF, P.J., and BURKE, J., concur.